**In the Matter of the ESTATE OF F.M. NAGL, Deceased.**

**In the Matter of the ESTATE OF Florence R. NAGL, Deceased.**

**Appeal of Elma SCHNEIDER and Philip Kennebeck.**

No. 86–739.

Court of Appeals of Iowa.

April 22, 1987.

Ronald H. Schechtman of Carroll, for appellant Elma Schneider.

C. Joseph Coleman, Jr., of Mitchell, Coleman, Perkins & Enke, Fort Dodge, for appellant Philip Kennebeck.

Richard J. Meyer of Fillenworth & Fillenworth, Estherville, for appellee Anita Meyer.

James Furey of Carroll, for appellee Douglas Rohe.

Heard by OXBERGER, C.J., and SCHLEGEL, and HAYDEN, JJ., but considered en banc.

HAYDEN, Judge.

The executors of the F.M. Nagl Estate and the Florence Nagl Estate filed applications to have the Carroll County District Court determine whether the residuary clauses of the testators' wills provided for a per capita or a per stirpes distribution. After a hearing, the trial court ruled that the residuary clauses of the wills were not ambiguous and provided for a per capita distribution.

F.M. Nagl died on December 28, 1982. He was 82, and was survived by his wife, Florence Nagl, who died thirteen months later on January 27, 1984. They had been Carroll County farmers for nearly fifty years and had no children, but left forty-five nieces, nephews, grand nieces, and grand nephews as heirs, and a considerable estate.

F.M. Nagl's will's residuary clause provided as follows:

Subject to the above and foregoing bequests set forth herein, and after my estate has been converted to cash by my executor, all the rest and residue and remainder of my estate shall be divided equally share and share alike, among my heirs and the heirs at law of my said wife, Florence R. Nagl.

Florence Nagl died thirteen months later and her will provided as follows:

Subject to the provisions of Item 1, I hereby give, devise and bequeath all real and personal property to my husband, F.M. Nagl, and in the event that my husband predeceases me, then and in that event, I give, devise and bequeath all real and personal property to the heirs at law of my husband, F.M. Nagl, and to my heirs at law, to be equally divided among said heirs, share and share alike.

The following paragraph provides as follows:

In the event that my husband, F.M. Nagl, predeceases me and after my death, it is my direction that my executor shall sell and convert all real and personal property to cash for the purpose of dividing the same among the heirs of F.M. Nagl and my heirs as hereinbefore set forth in Item 2.

At trial, on March 10, 1986, extrinsic evidence allegedly relating to the testators' intents was brought out over appellee's strenuous objections. This testimony provided that both wills were dictated by attorney Leighton A. Wederath, and typed and witnessed by his secretary Darlene Beyerink. Since Mr. Wederath had died, Ms. Beyerink was called as the main witness to explain the will. She testified she had related to Florence Nagl that her husband's estate would be distributed on a per stirpes basis and she had prepared the final inheritance tax return pursuant to a per stirpes distribution.

The trial court found no patent or latent ambiguity in the plain language of either will, did not consider the extrinsic evidence, and found the plain language of the will provided for a per capita distribution to one class of legatees. The executors who requested the ruling take no sides in this appeal, but ask that the costs of this appeal not be taxed to the estate.

Elma Schneider and Phillip Kennebeck, who proposed a per stirpes distribution, appeal, contending the trial court erred in: (1) finding no ambiguity existed in the will and denying the consideration of extrinsic

evidence; (2) finding the residuary clauses in the wills provided for a per capita rather than a per stirpes distribution; and (3) failing to approve a practical construction of the wills.

■ Review of district court's decision tried in equity and interpreting a will provision, is de novo. Iowa Code § 633.33 (1985); *Matter of Estate of Eickholt,* 365 N.W.2d 44, 46 (Iowa App.1985). In this review we give weight to the findings of fact made by the trial court, but we are not bound by them. Iowa R.App.P. 14(f)(7).

The legal principles which apply to will interpretation cases are well known and succinctly set forth in the following:

It is well settled law (1) the testator's intent is the polestar and must prevail; (2) his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain.

*Matter of Estate of Anderson,* 359 N.W.2d 479, 480 (Iowa 1984); *In re Estate of Larson,* 256 Iowa 1392, 1395, 131 N.W.2d 503, 504–05 (1964).

■ A division per capita means by a number of individuals equally or share and share alike, as opposed to a division per stirpes where those of more remote kinship to testator take by right of representation. *Gibert v. Wenzel,* 247 Iowa 1279, 1281, 78 N.W.2d 793, 794 (1956). The determining factor in ascertaining whether beneficiaries under a will take per capita or per stirpes is the intention of the testator, which is to be found from the language used as applied to all the surrounding circumstances and conditions present in the testator's mind when the will was made. *Martin v. Beatty,* 253 Iowa 1237, 1241–42, 115 N.W.2d 706, 709 (1962). We will not distort or nullify the testator's clear intention through the application of arbitrary or technical rules of construction. *Id.* at 1241, 115 N.W.2d at 709.

■ We consider the residuary clauses of both wills to be functionally similar. Mr. F.M. Nagl's will provided the remainder of his estate "... shall be divided equally share and share alike, among my heirs and the heirs at law of my said wife, Florence R. Nagl." In her residual clause Florence Nagl provided "... devise and bequeath all real and personal property to the heirs at law of my husband, F.M. Nagl, and to my heirs at law, to be equally divided among said heirs, share and share alike." We carefully consider these clauses in our determination of the testators' (F.M. and Florence Nagl) intent regarding distribution of their estates. The words of a will are to be used in their natural, usual, popular, and conventional meaning. *Id.* at 1242, 115 N.W.2d at 709. We are bound by the unambiguous language of the will. *Matter of Estate of Anderson,* 359 N.W.2d at 481. The court may not make a will for the testator, nor impose upon the will a forced or unnatural construction to accomplish what may now seem to be a more just or appropriate distribution of the estate. *Martin v. Beatty,* 253 Iowa at 1243, 115 N.W.2d at 710. We consider not what the testator meant to say but what he meant by what he did say. *In re Estate of Fairley,* 159 N.W.2d 286, 288 (Iowa 1968).

■ We conclude the residuary clauses of the testators, when considered together, reflect an intent to distribute an equal share of the estate to their heirs as one class. We therefore affirm the findings of the trial court.

■ Although we find the words of the testators' residuary clauses not to be ambiguous, even if we do consider the applicable rules of construction and the legal effect of the words used, we come to the same conclusion. When construing wills, meaning and effect should, if reasonably possible, be given to every provision, clause, and word. *Houts v. Jameson,* 201 N.W.2d 466, 469 (Iowa 1972). Both residuary clauses use the phrases "equally divided" and "share and share alike." The use of words such as "equally," "in equal

shares," or "share and share alike" generally indicate an intent on testators' part to distribute per capita. *Id.* at 469. However, this rule will yield to counterindications in the will. *Id.* One such factor is the use of the word "heirs" or the phrase "heirs at law," both which are found in the respective residuary clauses. The supreme court in *In re Larson's Estate* cited the following language regarding the use of "heirs:"

> [A] devise to "heirs," whether it be to one's own heirs or to the heirs of a third person, designates, not only the persons who are to take, but also the manner and portions in which they are to take, and that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be that they shall take as heirs would take by the rules of descent.

256 Iowa at 1397, 131 N.W.2d at 506. We find the words "equally divide" and "share and share alike" control the presumption of the testators' intents. The words, "heirs" and "heirs at law," are not used to denote succession, but to describe the beneficiaries who were to take under the will, they will not be given their strict legal meaning since it is evidently not the testator's intention. *Gilbert v. Wenzel*, 247 Iowa at 1283, 78 N.W.2d at 795. The residual division intended in this will is directed to a class of individuals and not by right of representation. This is evidenced by use of the word "among," which indicates a division to more than two individuals. 247 Iowa at 1284, 78 N.W.2d at 797. If the testators had intended a one-half split to F.M. and Florence's heirs, they would have used the word "between," which imparts a division between the individuals or groups. This is the critical difference as to the present case and the case of *Tucker v. Nugent*, 117 Me. 10, 102 A. 307 (1917), which appellants rely on and in which the will uses the word "between."

We believe the best indicator of the testators' intent is the phrase in Florence Nagl's will "to be equally divided among said heirs." This phrase refers not just to her heirs but also to those of her husband. The heirs of F.M. and Florence Nagl are named as a class of individuals and each is put upon an equality with the other. *See Parker v. Foxworthy*, 167 Iowa 649, 651, 149 N.W. 879 (1914). The division is direct and immediate to their heirs, and they shall take share and share alike. This conclusion is also supported by F.M. Nagl's will and the use of the word "among" in reference to the class as a whole.

When the terms of a will are clear, plain, and unambiguous, reference to extrinsic material is not allowed. *In re Estate of Kiel*, 357 N.W.2d 628, 630 (Iowa 1984). Here we are inclined to agree with the trial court that no latent or patent ambiguity appears within the four corners of the testators' wills. Before extrinsic evidence can be admitted to show testator's intent a patent or latent ambiguity must be shown. *Matter of Estate of Anderson*, 359 N.W.2d at 481. Since no such showing was made we refuse to consider the extrinsic evidence regarding testators' intent presented to the trial court.

The testators intended to distribute the residue of their estate per capita. This is made clear by the language found in the wills and the circumstances surrounding the creation of the wills. The testators intended to create one class of individuals, composed of all of their heirs. If such a division had not been intended, the testators could easily have remedied the situation by giving one-half to his heirs and one-half to her heirs. Their failure to make such a change reflects an intent to make the distribution per capita.

Finally appellants argue the theory of practical construction, as found in *In re Larson's Estate*, 256 Iowa 1392, 1404, 131 N.W.2d 503, 510 (1964). "[A] practical construction placed on an ambiguous provision in a will by the parties interested therein is admissible in evidence to aid the court in the construction of the instrument...." 80 Am.Jur.2d *Wills* § 1342 (1975). As appellants correctly point out, this principle is applicable only where the will is actually ambiguous and the conduct of the parties entirely unequivocal, or where the elements of estoppel clearly appear. We have al-

ready found these writings to be unambiguous and from the record we find no evidence of estoppel by the parties involved. The practical construction principle is not applicable to this case.

AFFIRMED.

All Judges concur except SACKETT, J., who dissents.

SACKETT, Judge (dissenting).

I dissent.

It should be noted that F.M. Nagl had seven brothers and sisters and Florence had six brothers and sisters. Their siblings predeceased them. The appellant Elma Schneider is an only child of one of Florence's sisters. Appellant Philip Kennebeck is the only child of one of F.M.'s brothers.

When Florence and F.M. died there were some 45 persons who would have taken by intestate distribution. Some of the heirs were nieces and nephews and some were grandnieces and grandnephews. If Florence and F.M. had died intestate these people would have taken per stirpes, meaning different persons would have taken different shares.

The trial court and the majority have determined these people from different classes should share equally or per capita. A family tree is attached showing the result of the per capita distribution. To adequately decide this issue, I first define "heir." The majority has not addressed the definition of the word "heirs." The word "heirs" does not have a fixed meaning and the sense in which the word is used by the testators must be determined from the instruments read as a whole and in the light of all relevant facts and circumstances under which the instrument was executed. *Schaefer v. Merchants National Bank of Cedar Rapids,* 160 N.W.2d 318, 320 (Iowa 1968).

Ordinarily, a reference to the statutes of distribution in connection with a bequest to "heirs-at-law" of the testator is taken as pointing out not only those who are to take but also *the proportions,* in which they are to take. *Mathew v. Mathew,* 209 N.W.2d 573, 576 (Iowa 1973). Unless a contrary intent appears from the evidence, "heirs" will be construed as those who would take under the statutes of descent. *Schaefer,* 160 N.W.2d at 320.

In the instant case, there is nothing in either will to indicate an intent by the testators to define heirs as other than those who take by descent nor is there anything to rebut the presumption that the testators intended the heirs-at-law to take according to the rules of descent. The presumption is in favor of a per stirpes distribution to family units because it is fair and in accord with the natural instincts of a testator. *Estate of Larson,* 256 Iowa 1392, 1397, 131 N.W.2d 503, 506 (1964); *Claude v. Schutt,* 211 Iowa 117, 122, 233 N.W. 41, 43–4 (1930). *See generally Martin v. Beatty,* 253 Iowa 1237, 1241–42, 115 N.W.2d 706, 709 (1962).

Wills are construed so as to conform as nearly as possible to the laws of descent and distribution. *Watson v. Manley,* 257 Iowa 92, 97, 130 N.W.2d 693, 695 (1964). The purpose of such construction is so people of a class will be treated equally. *Id.* There is nothing in the will to controvert the presumption for per stirpes distribution to the families. I find nothing to show me there is any intent by testators to construe heirs in any manner other than those who would take under statutes of descent. Because decedents were childless their estates would go to their parents and descend from there. I would direct the estates one-half to each family. Finding no intent to the contrary, I would determine the heirs in each family take per stirpes.

774

PER CAPITA DISTRIBUTION OF F.M.'S ESTATE

Testator F.M.

MIKE — GEORGE — JOHN — LOUIS — JOSEPH — KATHERINE — MAE

MIKE: ON(1) EM(2) AJ(3) AN AN(4) MN(4) AN(5) JN(6) LN HL JL(7)

JOHN: FW(8) LN(9) AN(10)

LOUIS: DR(11) DN(12) RN(13) AM(14) LW(15)

JOSEPH: GD(16) RT(17) EN ON MD-TH(18)

KATHERINE: SN(19) RN(20) EV(21) DH(22)

MAE: Appellant Philip Kennebeck (23)

Results of per capita distribution – 23 parts
7 to Mike
3 to John
5 to Louis
2 to Joseph
5 to Katherine
1 to Mae

◯ – Deceased

PER CAPITA DISTRIBUTION OF FLORENCE'S ESTATE

Testator FLORENCE

JOHN — LILLIAN — EDWARD — THERESA — WALTER — CATHERINE

JOHN: Appellant Elma Schneider (1)

LILLIAN: LT(2) MT(3) PR(4) FS(5)

EDWARD: EK VS(6) JK(7) RC(8)

THERESA: FB RW(9) RW(10) LW(11)

WALTER: VR(12) NR(13) ER(14) WR GR(15) DR(16) DR(17) DR(18) DR(19) DR(20) DR(21) DR(22)

Results of per capita distribution – 22 parts
1 to John
5 to Lillian
3 to Edward
3 to Theresa
11 to Walter

◯ – Deceased